**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne Clifford,<br><br>            Plaintiff,<br><br>v.<br><br>LexisNexis Risk Data Management LLC,<br><br>            Defendant. | No. CV-21-01145-PHX-DJH<br><br>**ORDER** |

The parties' have filed cross-Motions for Summary Judgment (Docs. 47; 53).[1] Both motions are fully briefed.[2] Defendant LexisNexis Risk Data Management LLC ("Defendant") also filed two Motions to file exhibits under seal (Docs. 50; 55).  The Court must decide whether Defendant is a "Consumer Reporting Agency" that issues "consumer reports" as defined under the Fair Credit Reporting Act ("FCRA").  The Court must also decide whether Defendant conducted a reasonable investigation as to Plaintiff Wayne Clifford's ("Plaintiff") dispute about the accuracy of his bankruptcy report.

**I.      Background[3]**

This case arises under the FCRA.  Plaintiff is a consumer.  Defendant collects data about certain public records and delivers that data to its customers for fees.  (Doc. 53-2 at

---

[1] Both parties requested oral argument on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] (*See* Docs. 54; 57; 58; 59).

[3] Unless otherwise noted, the following facts are undisputed.

¶ 2). Defendant does not offer services to consumers. (*Id.* at ¶ 4). Non-party Equifax[4] has a Consumer Bankruptcy Public Record Acquisition Agreement ("Records Agreement") with Defendant under which Defendant provides public bankruptcy records to Equifax from PACER. (*Id.* at ¶ 8; 22). Under the Records Agreement, Defendant also receives Single Public Records Collection ("SPRC") requests from Equifax to re-collect docket information for specific cases. (*Id.* at ¶ 9).

### A. Plaintiff's Petition for Bankruptcy

On October 7, 2009, Plaintiff filed for bankruptcy. (Doc. 47-2 at 2). He was discharged on May 18, 2010. (*Id.* at 5). Ten years later, on May 1, 2020, Plaintiff's wife filed a police report with the Maricopa County Sheriff's office stating Jeffrey Benson filed a bankruptcy petition in her and Plaintiff's name without their knowledge or permission. (Doc. 47-3 at 4–7). Mr. Benson appeared to have filed this petition on March 6, 2019, and listed the last four digits of Plaintiff's social security number ("SSN") as 9827. (*Id.* at 10, 15).

### B. Plaintiff's Correspondence with Equifax

On September 8, 2020, Plaintiff's counsel sent Equifax a letter stating Plaintiff reviewed his credit disclosure and discovered the following inaccurate information in his credit file: "Chapter 7 Bankruptcy with Reference Number: 1902380-DSP-03/19." (*Id.* at 2). Plaintiff attached the bankruptcy petition and the police report to his letter and noted that the last four digits of the SSN on the petition were different than his SSN. (*Id.*)

### C. Equifax's Correspondence with Defendant

On October 1, 2020, Defendant received an SPRC request from Equifax related to Plaintiff's bankruptcy case. The SPRC request noted under the claims code: "NOT MINE—PROVIDE COMPLETE ID, STATUS, DATES & AMTS." (Doc. 53-2 at 22). The next day, Defendant responded to the SPRC, which appeared to verify the bankruptcy case number along with other information about the case filing but included a different SSN for Plaintiff ending in 9827. (*Id.*) The record also shows Defendant received an

---

[4] Plaintiff also filed suit against Equifax on November 25, 2020. (Doc. 53-5 at ¶ 2, 5). The parties later settled. (*Id.* at 21).

Automated Consumer Dispute Verification ("ACDV") from Equifax on September 30, 2020, that stated Plaintiff "claims true identity fraud—account fraudulently opened initiate investigation." (Doc. 53-3 at 26).

### D. Equifax's Subsequent Correspondence with Plaintiff

On October 3, 2020, Equifax sent Plaintiff the results of his reinvestigation, which stated Equifax "verified that this item belongs to you." (*Id.* at 32). The "item" referred to the bankruptcy case 1902380—the same case Plaintiff complained about in his letter to Equifax. (*Id.*) The letter further informed Plaintiff that Equifax obtained the public record using Defendant as a vendor and provided a web address. (*Id.*) The webpage states, "If you have concerns that a record has been erroneously matched to you and included in your credit report, please contact Equifax to correct the error. [Defendant] does not match bankruptcy information to consumer credit files for Equifax. Equifax performs this matching." (Doc. 53-4 at 11).

### E. Plaintiff files Current Suit

On July 1, 2021, Plaintiff filed his Complaint. (Doc. 1). Plaintiff argues Defendant is both a consumer reporting agency ("CRA") and furnisher under the FCRA. Plaintiff claims Defendant negligently and willfully violated 15 U.S.C. §§ 1681e(b) and 1681i(a), which impose obligations on CRAs. (Doc. 47 at 2). Plaintiff further claims Defendant negligently and willfully violated Section 1681s-2(b), which imposes obligations on furnishers of information to CRAs. (*Id.*) Both parties seek summary judgment on all claims.

## II. Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for

trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

### III. Discussion

Plaintiff moves for summary judgment on all counts in the FAC as to liability only. (Doc. 47 at 3). Defendant moves for summary judgment, asserting that, as a matter of law, it is not a CRA and thus it cannot be held liable for obligations under Sections 1681e(b) and 1681i(a) of the FCRA. (Doc. 53). Defendant also moves for summary judgment on Plaintiff's Section 1681s-2(b) claim, arguing the public bankruptcy record it provided to Equifax did not contain any inaccurate information. (*Id.*)

The Court must first decide whether Defendant is a CRA that is subject to the obligations under Sections 1681e(b) and 1681i(a). The Court must also consider whether Defendant reasonably investigated Plaintiff's dispute about the accuracy of his bankruptcy record under Section 1681s-2(b). The Court will address each issue in turn.

### A. Fair Credit Reporting Act

Congress enacted the FCRA to ensure fair and accurate credit reporting, promote a more efficient banking system, and protect consumer privacy. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). There are three main entities that are either covered or regulated by the FCRA: consumers, furnishers, and Consumer Reporting Agencies ("CRAs"). *See* 15 U.S.C §§ 1681a, 1681s-2. The FCRA imposes procedural obligations on CRAs and creates a private right of action for consumers to enforce compliance. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113–14 (9th Cir. 2017).

Here, Plaintiff alleges Defendant violated Section 1681e(b) and Section 1681i(a), both of which regulate CRAs. *See* 15 U.S.C. §§ 1681e(b), 1681i(a). Plaintiff also alleges Defendant violated Section 1681s-2(b), which imposes obligations on furnishers of information to CRAs. *See* 15 U.S.C. § 1681s–2. The threshold issue is whether Defendant is a CRA that issues "consumer reports" under the FCRA.

**B.     Defendant is not a Consumer Reporting Agency**

The FCRA defines a "consumer reporting agency" as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

The FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes.

15 U.S.C. § 1681a(d)(1).

To be a CRA, an entity must act "for the purpose of furnishing consumer reports."

15 U.S.C. § 1681a(f); *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1027 (9th Cir. 2019) ("By its plain meaning, therefore, FCRA applies to an entity that assembles or evaluates consumer information with the intent to provide a consumer report to third parties."). The definition of a CRA includes four elements: (1) the company works in exchange for compensation; (2) it regularly assembles or evaluates information about consumers; (3) its purpose in doing so is to furnish consumer reports to third parties; and (4) it uses interstate commerce to achieve these aims. *See* 15 U.S.C. § 1681a(f); *McCalmont v. Fed. Nat. Mortg. Ass'n*, 2014 WL 3571700, at *4 (D. Ariz. 2014); *Zabriskie v. Fed. Nat. Mortg. Ass'n*, 109 F. Supp. 3d 1178, 1183 (D. Ariz. 2014).

Defendant does not appear to dispute the first or fourth elements and the Court accordingly finds those satisfied. Defendant disputes the second and third element, arguing it "assembles information about *public records* unmatched to specific individuals" and that its customers, such as Equifax, may act as CRAs when they link the public record data to particular consumer files. (Doc. 53 at 17) (emphasis in original). However, Defendant asserts it does not perform "consumer matching—it simply supplies raw data that report preparers may choose to use." (*Id.*) Plaintiff argues Defendant gathered bankruptcy information and provided it to Equifax and thus acted as a CRA. (Doc. 47 at 12).

The issue is whether, under the second element, the bankruptcy record Defendant assembled was *about a consumer*. Plaintiff conclusory asserts that Defendant "regularly engages in the practice of assembling consumer credit information . . . on consumers for the purpose of furnishing consumer reports to third parties." (Doc. 47 at 11–12). Plaintiff cites an out-of-circuit district court case to support this proposition, stating "one who assembles information does not necessarily change its contents . . . [t]he definition only requires that the assembler gather or group the information." *See McGrath v. Credit Lenders Serv. Agency, Inc.*, 2022 WL 580566, at *5 (E.D. Pa. Feb. 25, 2022). The *McGrath* decision is neither binding nor persuasive. The court there considered whether the defendant engaged in "assembling" and concluded it was "at a loss" to call the defendant's actions "anything other than the 'assembling' of information." *Id.* The dispute here is not

whether Defendant *assembled* information, indeed Defendant conceded as much, but whether the bankruptcy record assembled was *about a consumer*.

Defendant's argument thus hinges on whether it provided Equifax data about public records, or about a consumer. Defendant argues that Plaintiff cannot show that Defendant expected his bankruptcy record to be used for the purposes in § 1681a(d)(1). To be a CRA, Defendant must assemble or evaluate consumer information with "the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). As noted, a "consumer report" is any communication by a consumer reporting agency "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for credit, insurance, employment, or other statutorily enumerated reasons. *Id.* § 1681a(d)(1). Defendant contends there are two fundamental characteristics of consumer reports: the reports are about an identified consumer, and the reports are expected or intended to serve as a factor in making certain eligibility decisions. (Doc. 53 at 17). Defendant argues the bankruptcy record it provided to Equifax meets neither of those two criteria. (*Id.*) The Court agrees with Defendant.

It is true that Defendant provides Equifax with bankruptcy records under the Records Agreement. (Doc. 53-2 at ¶ 9). The Records Agreement explicitly states, however, that "Equifax shall be solely responsible for the incorporation, selection, linking and/or matching of Licensed Data to *specific consumers* and distribution of Licensed Data from any Equifax repository." (*Id.* at ¶ 11) (emphasis added). Indeed, the letter Equifax sent to Plaintiff about its reinvestigation directed Plaintiff to a webpage that states "[Defendant] does not match bankruptcy information to consumer credit files for Equifax. Equifax performs this matching." (Doc. 53-4 at 11).

The Court is therefore not persuaded that Defendant acted as a CRA when it confirmed a bankruptcy case existed because Equifax alone performed the consumer matching, not Defendant. *See Thacker v. GPS Insight, LLC*, 2019 WL 3816720, at *9 (D.

Ariz. Aug. 14, 2019) ("That an entity acts as a consumer reporting agency in one case does not establish that the entity always so acts."). As Defendant notes, it is unreasonable to suggest any raw data vendor to a CRA itself becomes a CRA by virtue of that CRA matching the data to a specific consumer. *See Mix v. JPMorgan Chase Bank, NA*, 2016 WL 5850362, at *5 (D. Ariz. Oct. 6, 2016) (noting the Federal Trade Commission's report that "a business that delivers records, without knowing their content or retaining any information from them, is not acting as a CRA even if the recipient uses the records to evaluate the consumer's eligibility for insurance or another permissible purpose."). Plaintiff has thus failed to establish an element of his Section 1681e(b) and 1681i(a) claims—that Defendant is a CRA—and summary judgment will be entered in Defendant's favor as a matter of law on those claims.

The Court must still determine whether Defendant violated Section 1681s-2(b) of the FCRA, which imposes obligations on furnishers of information to CRAs.

### C. Defendant's Obligations as a Furnisher—Section 1681s-2(b)

In addition to holding CRAs accountable, the FCRA imposes duties on the "furnishers" that provide information to those agencies. *See* 15 U.S.C. § 1681s–2. Subsection (b), which provides a private right of action, imposes a series of duties once a furnisher receives notice from a CRA that a consumer disputes the accuracy of the furnisher's reporting. *See* § 1682s–2(b). Upon notification, a furnisher must, among other things, conduct a reasonable investigation and update any information it finds to be inaccurate or incomplete. *Id.*; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009).

Before a court considers the reasonableness of the furnisher's procedures, a plaintiff must make a *prima facie* showing of an inaccuracy in the credit report. *See Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022). Once shown, then plaintiff must show that the investigation itself was unreasonable. *See id.* Information can be inaccurate or incomplete if it is "patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Drew v. Equifax*

*Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012).

To establish a claim under Section 1681s-2(b), plaintiff must show (1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s–2(b)(1)(A)–(E). *See Cook v. Mountain Am. Fed. Credit Union*, 2018 WL 3707922, at *3 (D. Ariz. Aug. 3, 2018) (internal citation omitted).

### 1. Whether Defendant is a Furnisher

The first issue is whether Defendant is a furnisher. The FCRA's implementing regulations define a furnisher as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c). Plaintiff argues Defendant is a furnisher because it supplied information to Equifax about a bankruptcy case allegedly filed by Plaintiff. (Doc. 57 at 9). Defendant claims it is not a furnisher for the same reasons it is not a CRA—namely, it does not supply information about consumers. (Doc. 53 at 12, n. 1). Defendant does not seek summary judgment on that ground, however, and reserves that argument for trial should the Court deny its motion. (*Id.*)

Regardless of the parties' contentions, Plaintiff's Section 1681s-2(b) claim still fails as a matter of law because Defendant's procedures were reasonable. *See Gorman*, 584 F.3d at 1161 (affirming summary judgment because the defendant's procedures were reasonable); *see infra* Section III.C(3)(ii).

### 2. Inaccurate Information

Here, Defendant asserts summary judgment is appropriate because the bankruptcy report it provided to Equifax was accurate. Defendant thus claims Plaintiff cannot make the *prima facie* showing necessary to bring a Section 1681s-2(b) claim. The Court disagrees.

It is undisputed that Equifax submitted a SPRC request to Defendant after receiving

a letter from Plaintiff asking it to remove the bankruptcy petition because it was the result of identity theft. (Doc. 53-3 at 8). In its SPRC Response, Defendant reported a bankruptcy case existed and that the VSSN ended in 9827. (Doc. 52-2 at 19). Defendant contends it simply reported that a bankruptcy case existed with Plaintiff's name and address and included "a [SSN] that was apparently not Plaintiff's actual [SSN]." (Doc. 53 at 11). Defendant says Equifax decided to link that case to Plaintiff despite the SSN discrepancy— "both initially and after [Defendant] pointed out that the number was different from the one Equifax had supplied for Plaintiff." (Doc. 53 at 11). Regardless of whether Equifax linked the case to Plaintiff, it is undisputed that the SPRC Defendant provided to Equifax contained an incorrect SSN. The law is clear that information that is "patently incorrect" is inaccurate. Plaintiff's SSN ends in 7375, and the SPRC provided by Defendant listed it as 9827. (Doc. 52-2 at 19; Doc. 53-2 at 22). This is plainly inaccurate. *Drew*, 690 F.3d at 1108.

Although the Court finds Plaintiff has made a *prima facie* showing of inaccurate information in Defendant's SPRC, the Court must still determine whether Plaintiff has shown the investigation itself was unreasonable. *See Sanchez v. JPMorgan Chase Bank NA*, 2022 WL 17404796, at *4 (D. Ariz. Dec. 2, 2022) ("Only once it is determined that a piece of information reported is patently incorrect or materially misleading can a court move on to the next step of determining whether the investigation conducted by a furnisher was reasonable.").

### 3.     Unreasonable Investigation

After receiving the ACDV and SPRC requests from Equifax, Defendant was required to conduct a reasonable investigation into the disputed information. *See* § 1681s–2(b)(1)(A). A reasonable investigation entails an "inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Gorman*, 584 F.3d at 1156. Courts consider several factors in assessing the reasonableness of the investigation, such as (1) the nature, size, complexity and scope of the furnisher's activities; (2) the furnisher's relationship to the consumer and the debt; (3)

the level of detail in the dispute notice; and (4) the feasibility of implementing investigatory procedures. *See Gross*, 33 F.4th at 1253. A key factor is the amount of information that the furnisher received from the CRA regarding the dispute. *Id.* at 1157.

### i. Notice of Disputed Information

Defendant contends it never received a "notice" from Equifax because the "only item of information that Plaintiff disputed with Equifax was the linking or matching of the Bankruptcy Case to Plaintiff's credit file." (Doc. 53 at 14). Defendant claims its Records Agreement, however, confirms that Equifax alone determines the linkage of bankruptcy records to specific individuals. (*Id.*) Defendant thus argues Equifax's SPRC request was not a notice that triggered an investigation by Defendant. (*Id.* at 16).

"A furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA." *Gorman*, 584 F.3d at 1157. "Such notice must include 'all relevant information regarding the dispute that the [CRA] has received from the consumer.'" § 1681i(a)(2)(A). "It is from this notice that the furnisher learns the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation." *Id.*

The Court rejects Defendant's argument. The record shows Defendant received an ACDV and SPRC from Equifax. The ACDV characterized Plaintiff's dispute as "claims true identity fraud—account fraudulently opened initiate investigation." (Doc. 47-4 at 2). The SPRC, under "Customer Supplied Case Information," states a similar description: "claims code: 01—not mine—provide complete ID, status, dates & AMTS." (Doc. 53-2 at 22). The Court finds these descriptions are sufficient notice to trigger an investigation by Defendant into whether a bankruptcy case existed.

### ii. Reasonableness of Procedures

The next question is whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute. *Gorman*, 584 F.3d at 1157. Juries' "unique competence" to weigh questions of

reasonableness limits the circumstances in which summary judgment should be granted on this issue. *Id.* (quotation omitted). Summary judgment is accordingly warranted "when only one conclusion about the conduct's reasonableness is possible." *Id.* (quotation omitted).

Plaintiff claims it is undisputed that Defendant did not investigate Plaintiff's reported inaccuracy because Defendant admits all it did was respond to Equifax's SPRC with the erroneous SSN. (Doc. 47 at 10). But the record shows that Defendant responded to Equifax's ACDV and SPRC by supplying information that showed the bankruptcy case existed. (Doc. 47-4 at 2; Doc. 53-2 at 19, 22). Thus, despite Plaintiff's contention, Defendant indeed took some steps to investigate based on the limited descriptions in the notices provided by Equifax. Moreover, Equifax's SPRC request to Defendant did not provide Plaintiff's dispute letter or any other documents. (Doc. 53-2 at ¶ 24); *see Gross*, 33 F. 4th at 1253 (finding one of the most important factors in assessing reasonableness is the quality and type of information that the furnisher received from the CRA when it was notified of the dispute). The nature of the inquires here suggest a dispute as to the legitimacy of the bankruptcy case, and Defendant reasonably supplied information to Equifax that such a case existed, albeit with a different SSN from Plaintiff's. Given the scant information contained in the claim descriptions, coupled with no attachments about the dispute, this Court does not find Defendant could have been reasonably expected to undertake an investigation beyond confirming the bankruptcy was on the public docket. *See Sanchez*, 2022 WL 17404796, at *8 (finding the furnisher's investigation was reasonable given "the two pieces of information" it received relating to the consumer's dispute).

The Court therefore finds "only one conclusion about the conduct's reasonableness is possible," and that conclusion is that Defendant acted reasonably. *Gorman*, 584 F.3d at 1157. Defendant is thus entitled to summary judgment on Plaintiff's Section 1681s-2(b) claim.

Accordingly,

**IT IS HEREBY ORDERED** that is Defendant LexisNexis Risk Data Management LLC's Motion for Summary Judgment (Doc. 53) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff Wayne Clifford's Motion for Summary Judgment (Doc. 47) is **denied**.

**IT IS FURTHER ORDERED** that Defendant LexisNexis Risk Data Management LLC's Motions to file exhibits under seal (Docs. 50; 55) are **denied as moot**.

**IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 10th day of March, 2023.

Honorable Diane J. Humetewa
United States District Judge